**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|                                              |     |                      |
| -------------------------------------------- | --- | -------------------- |
|                                              | )   |                      |
| IN RE SMITH & WESSON HOLDING                 | )   | C.A. No. 07-30238    |
| CORP. SEC. LITIG.                            | )   |                      |
|                                              | )   |                      |

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE**
**DECLARATION OF CANDACE L. PRESTON**

Lead Plaintiff, Oklahoma Firefighters Pension and Retirement System ("Plaintiff"),

respectfully submits this memorandum of law in opposition to Defendants' Motion to Strike the

Declaration of Candace L. Preston ("Motion to Strike"), which was filed in conjunction with

Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's Motion for Class

Certification ("Reply Brief").

As demonstrated below, the Declaration of Candace L. Preston ("Preston Declaration")

should not be stricken.  To the contrary, it was properly filed solely to clarify relevant facts in

light of the faulty "fraud-on-the-market" and loss causation arguments advanced in Defendants'

Opposition to Plaintiff's Motion for Class Certification ("Opposition Brief").  Defendants have

not shown that they would be prejudiced in any way by this Court's consideration of that

evidence.  Class certification is at an early stage of the proceedings and Defendants retain their

rights to object to Ms. Preston's testimony at trial, should it even be offered.  In addition, the

Preston Declaration is composed almost entirely of publicly available facts and/or facts that were

included either in the Consolidated Class Action Complaint ("Complaint") or Plaintiff's

Memorandum of Law in Support of Plaintiff's Motion for Class Certification ("Opening Brief").

Finally, Plaintiff did not violate any discovery rules in connection with the submission of the

Preston Declaration.  Accordingly, this Court should deny Defendants' Motion to Strike.

**PROCEDURAL BACKGROUND**

This Court's July 22, 2009 scheduling order ("Scheduling Order"), put in place a

schedule for expert discovery:  "Plaintiff shall designate and disclose information regarding its

trial experts as required by Fed. R. Civ. P. 26(a)(2) by August 2, 2010."  *See* Scheduling Order ¶

7.  Nothing in the Scheduling Order (or any other Order) required the disclosure of expert

witnesses at the class certification stage, the implication being that neither this Court nor the

parties anticipated the need for experts at the class certification stage of litigation.[1]

On October 13, 2009, Plaintiff filed its Opening Brief requesting that the Court certify as

a class action the securities fraud action against Smith & Wesson Holding Corp. ("S&W" or the

"Company"), its Chief Executive Officer, Michael F. Golden ("Golden"), and its Chief Financial

Officer, John Kelly ("Kelly") (collectively, the "Defendants").

On March 8, 2010, Defendants filed their Opposition Brief, arguing that the motion

should be denied, among other reasons, because the "fraud-on-the-market" presumption is

inapplicable here due to Plaintiff's inability to establish loss causation.  *See* Opposition Brief, at

29-31.  Defendants also argue that the "basic facts" presented in the Opening Brief supporting

Plaintiff's motion for class certification were inadequate to demonstrate loss causation.  *Id.* at 30.

On April 5, 2010, Plaintiff filed its Reply Brief, which responded to all of the arguments

Defendants raised in the Opposition Brief, including those concerning the "fraud-on-the-market"

presumption and loss causation.  As a threshold matter, Plaintiff argues in the Reply Brief that,

under established First Circuit precedent, the "basic facts" presented in the Opening Brief were

---

[1]        Consistent with that acknowledgement, when Plaintiff served its Amended Objections and Responses to
Defendants' Request for Interrogatories on January 25, 2010, it noted that expert discovery "at this juncture in the
litigation would be premature."  *See* Declaration of John A. Sten in Support of Defendant Smith & Wesson Holding
Corp.'s Motion to Strike Declaration of Candace L. Preston ("Sten Decl."), Ex. E.

sufficient to demonstrate that Plaintiff would be able both to invoke the "fraud-on-the-market"

presumption and to demonstrate the existence of loss causation.  Plaintiff filed the Preston

Declaration in conjunction with the Reply Brief solely in an attempt to clarify any confusion as

to the pertinent facts that may have been created by Defendants' faulty opposition arguments

concerning those distinct legal concepts.

On April 20, 2010, Defendants filed a motion to strike the Preston Declaration, arguing

that it offered new arguments and evidence, which violated both the parties' discovery

obligations and Defendants' due process rights.  Although not conceding the validity of

Defendants' argument, Plaintiff attempted to address any perceived concerns by offering on

April 24, 2010, to stipulate to a brief continuance of the class certification hearing to allow

Defendants the opportunity to depose Ms. Preston and submit additional briefing on her

testimony.  *See* Declaration of Bryan A. Wood in Opposition to Defendants' Motion to Strike the

Declaration of Candace L. Preston., Ex. 1.  Defendants rejected that offer absent the payment of

Defendants' attendant briefing costs, which Plaintiff rightfully declined to do.  *Id.*

## ARGUMENT

### I.    DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED

#### A.    The Preston Declaration Merely Provides Factual Support for Rebuttal Arguments Plaintiff Made in Reply to the Opposition Brief and Does Not Raise Any New Arguments or Introduce Any New Evidence

Defendants argue that the Preston Declaration should be stricken because it raises new

arguments and introduces new evidence in connection with a reply brief.  *See* Motion to Strike,

at 4-6.  That argument, however, could not be more off base.  Defendants' Opposition Brief

erroneously argues that class certification should be denied because Plaintiff can neither utilize

the "fraud-on-the-market" presumption nor demonstrate loss causation in this case.  *See*

Opposition Brief, at 25-32.  Plaintiff thoroughly rebuts those faulty arguments in the Reply Brief.

*See* Reply Brief, at 17-30.  The Preston Declaration merely provides factual support for

Plaintiff's rebuttal arguments, which themselves are simply further, albeit more detailed,

analyses of the points of law highlighted in Plaintiff's Opening Brief.  *Id.*

The only example Defendants cite of so-called "new" evidence – the "event study"

prepared by Ms. Preston and cited in her declaration – illustrates the point.  *See* Motion to Strike,

at 5-6.  Ms. Preston's "event study" was not cited to raise new arguments or introduce new

evidence.  Rather, its sole purpose was to rebut Defendants' specious and confusing opposition

arguments.  Specifically, the Opposition Brief argues that a purported lack of loss causation

caused by an alleged absence of a connection between the fraud and any curative statement

somehow rebuts the "fraud-on-the-market" presumption.  *See* Opposition Brief, at 26.  In

rebuttal, the Reply Brief merely built on the Opening Brief's articulation of the proper standards

for both distinct principles of law ("fraud-on-the-market" and loss causation) to demonstrate that

Defendants' arguments had no basis in fact or law.  Although unnecessary at the class

certification stage, Ms. Preston's "event study" was submitted solely to buttress those rebuttal

arguments by providing a more detailed analysis of the same underlying facts and theories on

which Plaintiff relied in its Opening Brief.

Accordingly, there is no basis to strike the Preston Declaration for containing Ms.

Preston's "event study," which offered no new theories or facts of which Defendants were

unaware.  *See, e.g.*, *Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1457 (E.D. Wis. 1993)

(noting that "where the reply affidavit merely responds to matters placed in issue by the

opposition brief and does not spring upon the opposing party new reasons for the entry of [the order], reply papers - both briefs and affidavits - may properly address those issues.").[2]

**B.      The Vast Majority of the Facts in the Preston Declaration Are Publicly Available and/or Can Be Found in Plaintiff's Complaint or the Opening Brief**

As described above, although unnecessary at the class certification stage of litigation, the facts cited in the Preston Declaration merely provide more detail concerning relevant facts offered in the Opening Brief, much of which was widely available and should come as no surprise to Defendants.  As a result, Defendants cannot claim to have been prejudiced by its submission.

*1.      Market Efficiency*

As Plaintiff argues in both the Opening and Reply Briefs, in order to "invoke the '"fraud-on-the-market"' presumption in this Circuit, a plaintiff must show that the market for a particular stock was 'efficient' during the class period." *Id.* at 18-19.  The sole purpose for making that showing is to eliminate the need to prove individual reliance. *Id.* at 19.  Importantly, all that Plaintiff is required to do at the class certification stage is to provide the "basic facts" to demonstrate that it will be able to invoke the doctrine. *Id.*  Those basic facts were presented in the Opening Brief.  Defendants, however, argued that the facts presented were not sufficient. *See* Opposition Brief, at 29-30.  As shown below, the Preston Declaration simply buttressed

---

[2]      Cases Defendants cite in support of their position are completely inapposite and, indeed, highlight the difference between the "new" arguments made on reply in those cases and the genuine rebuttal arguments made here.  For example, in *Andresen v. Diorio*, 349 F.3d 8, 13 (1st Cir. 2003), the appellant, on reply, switched its theory of direct liability for Fourth Amendment violations to a "conspiracy with state actors" theory after having been disabused of the notion that Defendants were state actors.  Accordingly, the First Circuit held that appellant had waived that newly advanced reply argument. *Id.*; *see also Roe v. Doe* , No. C 09-0682, 2009 U.S. Dist. LEXIS 59440, at *14 (N.D. Cal June 30, 2009) (granting motion to strike because party submitted brand new non-public evidence unrelated to evidence cited in opening brief).  In direct contrast to those cases, Plaintiff's reply argument is completely consistent with its Opening Brief and all the Preston Declaration does is provide further support for the same arguments that Plaintiff made therein.

Plaintiff's factual showing concerning the *Cammer* "market efficiency" factors in response to

Defendants' opposition argument.

For example, Plaintiff's Opening Brief describes the "efficient" market in which S&W's

common stock trades:  "S&W's stock was traded on the NASDAQ, an established, efficient

market."  *See* Opening Brief, at 15-16.  In the Reply Brief, Plaintiff cites the Preston Declaration

to buttress that fact with publicly available information that is neither new nor a surprise to

Defendants:

> S&W's common stock has traded on the NASDAQ GS since 2006.  Trading on
> the NASDAQ GS is facilitated by at least thirty (30) market makers through an
> electronic exchange.  Acknowledging the significance of that broad range of
> market makers, Defendant Golden stated that '[w]e believe that this trading
> environment will provide greater recognition for Smith & Wesson, as well as
> increased liquidity and value for our shareholders.'

Reply Brief, at 22 (citing Preston Declaration ¶¶ 25-27 (footnotes omitted)).

Similarly, the Opening Brief then describes the number of S&W common shares

outstanding:  "the average daily trading volume for S&W's stock throughout the Class Period

was more than 1 million shares."  *See* Opening Brief, at 16.  Again, Plaintiff uses the Preston

Declaration to buttress the information by providing the Court with additional detail about how

actively the stock traded – without making any new arguments or submitting any new

information of which Defendants were unaware:

> During the Class Period, S&W had an average of 40 million total shares
> outstanding and an average weekly trading volume as a percentage of shares
> outstanding of 5,865,950 shares.  Moreover, 80% of S&W's stock was held by
> outside shareholders during the Class Period, including 200 institutional investors
> such as banks, investment advisors, pension funds and research firms, many of
> which traded shares on behalf of individual investors.

Reply Brief at 20 (citing Preston Declaration, ¶¶ 15-17).

The Opening Brief also describes the analyst coverage of S&W common stock: "there were no less than nine (9) distinct securities analysts who regularly covered S&W throughout the Class Period." *See* Opening Brief, at 16.  Pointing once again to the Preston Declaration, the Reply Brief provides additional detail regarding the availability of information on S&W's stock without providing any new information that was not previously known by Defendants:

> First, no less than six securities analysts regularly covered S&W's stock during the Class Period, publishing at least thirty (30) reports in or around that time. Moreover, information from those reports was readily available on numerous electronic news services, such as Bloomberg, LEXIS/NEXIS, First Call, Reuters, and Dow Jones.  Second, S&W took affirmative steps to inform the investing public about its activites, including: (1) disseminating press releases that were widely available through newspapers, electronic newswires and databases, and on the Internet; and (2) hosting investor conference calls, the recordings and text of which were available through news services such as Bloomberg and Dow Jones.  Third, trading data (including stock prices and share volume) for S&W's stock was disseminated throughout the investment community in newspapers, through electronic systems such as Bloomberg, and n the Internet.  Finally, S&W filed periodic reports with the United States Securities and Exchange Commission ("SEC") that provided important information to the market, including business conditions affecting the Company's financial performance and other matters affecting its stock price.

Reply Brief at 21-22 (citing Preston Declaration ¶¶ 19-20, 22-23 (footnotes omitted)).

The Opening Brief similarly discusses S&W's eligibility to file a Form S-3: "S&W was eligible to file a Form S-3 Registration statement under SEC rules throughout the Class Period." *See* Opening Brief, at 16.  The Reply Brief, citing to the Preston Declaration, merely provides publicly available detail to Smith & Wesson's eligibility to file the Form S-3:

> S&W was eligible to file a Form S-3 under SEC rules throughout the Class Period and, in fact, did file a Form S-3 on March 12, 2007, that was later amended (on June 22, 2007) and remained effective throughout the Class Period and beyond.  In compliance with Form S-3 requirements, S&W registered more than 6.4 million shares of common stock and 4% Senior Convertible Notes due in 2026 with a face value of $80,000,000 and timely filed various SEC forms, including 10-Ks (annual reports) and 10-Qs (quarterly reports).

Reply Brief, at 22-23 (citing Preston Declaration ¶ 31).

Finally, the Opening Brief describes the "cause-and-effect" relationship, over time, between unexpected corporate events or financial releases and an immediate response in S&W's stock price, noting that the Company's stock rose in a statistically significant manner after every allegedly false statement and fell after each corrective disclosure. *See* Opening Brief, at 15-16 (citing *Cammer v. Bloom*, 711 F. Supp. 1264, 1287 (D.N.J. 1989) (describing market efficiency factors).[3]  In order to buttress that argument in response to Defendants' opposition, Plaintiff properly submitted Ms. Preston's "event study," which merely concludes based on publicly available information that there is only a small chance that the movement of S&W's stock price during the Class Period is unrelated to Defendants' public statements. *See* Reply Brief, at 23-24. Regardless, given that it is not necessary for Plaintiff to prove actual market movement at the class certification stage, Defendants cannot show prejudice as they will have a chance on summary judgment to thoroughly rebut any market "efficiency" evidence. *See In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 286-87 (D. Mass. 2009) (holding that existence of actual market movement is matter for summary judgment, not class certification).

### 2.    *Loss Causation*

As described above, Defendants erroneously argue that Plaintiff cannot establish loss causation due to its inability to invoke the "fraud-on-the-market" presumption. *See* Opposition Brief, at 26.  Although Plaintiff notes that "questions of loss causation are manifestly common to the class," *see* Reply Brief at 28 (citing *In re Credit Suisse/AOL Sec. Litig.*, 253 F.R.D. 17 29-30 (D. Mass. 2008)), it nevertheless submitted the Preston Declaration to rebut that argument and show that loss causation indeed exists in this case.  Significantly, the facts from the Preston Declaration supporting that showing are hardly new to Defendants when compared to allegations made in Plaintiff's Complaint, filed on May 30, 2008:

---

[3]    Plaintiff further noted that it is not required by the First Circuit to "prove actual market movement as a result of false statements at the class certification stage." *Id.* at 16 n.6 (citing *In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp.2d 275, 286-87 (D. Mass. 2009)).

| **Complaint** | **Reply Brief** |
|---|---|
| "For example, on October 29, 2007, S&W announced that it would be reducing its earnings guidance for the fiscal year 2008 from $0.63 per share to $0.50 per share because, among other reasons, the demand for S&W's products was not as strong as Defendants had previously represented it to be. The disclosure revealed that the actual demand for S&W's products – which Defendants knowingly concealed from the investing public – was not at a level that would have justified Defendants' projection that the Company would earn $0.63 per share in fiscal year 2008. That news caused S&W's stock price to plummet $7.97 per share, or 40%, on extremely heavy volume the next trading day, eliminating some of the price inflation attributable to Defendants' misrepresentations and omissions and causing significant damages to Lead Plaintiff and the other Class members." *See* Complaint ¶ 149. | "Specifically, the Company's stock price plummeted $7.97 per share, or 40%, on October 30, 2007, the day after S&W's first disclosure (October 29, 2007) that partially corrected prior misstatements by reducing S&W's FY 2008 guidance from $0.63 per share to $0.53 per share, due in part to a lack of product demand."   *See* Reply Brief, at 28 (citing Preston Declaration, ¶¶ 38, 47, 60). |
| "Likewise, on December 6, 2007, Defendants finally revealed the full truth about the lack of demand for S&W's products, again reducing previous earnings guidance for fiscal year 2008 from $0.50 per share to $0.40 per share. In that disclosure, S&W further revealed that the lack of demand for the Company's products extended across all product types and was compounded by the Company's massive inventory buildup. The very next trading day, the Company's stock dropped another $2.84 per share, or 30%, on heavy volume." *See* Complaint ¶ 150. | "Similarly, S&W's stock price dropped another $2.84 per share, or 29%, on December 7, 2007, the day after S&W again lowered its FY 2008 guidance from $0.53 per share to $0.40 per share, in part because the Company admitted that the previously announced lack of product demand actually extended to handguns - a core S&W product." *See* Reply Brief, at 28 (citing Preston Declaration, ¶¶ 38, 49-52, 61-66). |

As made clear in the above table, the vast majority of the purportedly objectionable "loss causation" facts in the Preston Declaration are merely publicly available facts that were presented to Defendants in the Complaint almost two years ago.  Moreover, the only additional factual information provided in the Preston Declaration – Ms. Preston's opinion that there is a minimal

chance that something else other than Defendants' public statements caused S&W's class period stock drops – is not a legal precursor to class certification.  *See In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 483 (2d Cir. 2008) (finding proof of loss causation unnecessary on class certification: "plaintiffs do not bear the burden of showing an impact on price"); *In re Boston Scientific*, 604 F. Supp. 2d at 287 (finding that issues regarding loss causation "are more properly addressed on summary judgment or at trial").

*     *     *     *

In sum, the facts supplied by the Preston Declaration are not new information that could have surprised Defendants; rather, they merely buttress the facts from the Opening Brief, which were either public information or included in the Complaint.  *See Baugh,* F. Supp. at 1457 (denying motion to strike where affidavit attached to reply brief "merely" clarified facts previously submitted).  Defendants can hardly say they were disadvantaged by these facts being included in the Reply Brief.  Moreover, to the extent that any new information was also included, that information is not legally necessary in making the determination of class certification.  Accordingly, there is no basis to strike the Preston Declaration on substantive grounds.

### C.      Plaintiff Did Not Violate Any Expert Disclosure Rules

Defendants argue that the Preston Declaration should be stricken because Plaintiff ostensibly violated several rules concerning the disclosure of expert information by failing to disclose Ms. Preston's identity to Defendants prior to filing her declaration.  *See* Motion to Strike, at 1 (asserting violations of Federal Rules of Civil Procedure 16(f), 26(a)(2), 37(c) and Local Rule 37.1).  Plaintiff, however, has committed no such violations.

First, Plaintiff did not violate Rule 16(f), which provides for sanctions for, among other things, failing to obey a pre-trial order.  *See* Fed. R. Civ. P. 16(f).  Here, the Scheduling Order requires Plaintiff to disclose *trial* experts, none of which are required to be disclosed prior to

10

August 2, 2010.  *See* Scheduling Order, at 1 (Dkt. 88).  Plaintiff has made no determination as to

its trial experts.  Yet even if Ms. Preston is eventually designated as one, Plaintiff has no

obligation to disclose that fact until August 2, 2010.  Defendants nevertheless argue that Plaintiff

violated the Scheduling Order because it *implicitly* called for Plaintiff to disclose experts prior to

the class certification deadline.  *See* Motion to Strike, at 6.  There is no basis for that assertion.

The more reasonable conclusion to draw from the absence of any disclosure requirement in the

Scheduling Order is that no experts were contemplated on class certification because all Plaintiff

needs to adduce at that stage are the "basic facts" necessary to demonstrate its ability to prove the

elements of its case.  The fact that the Preston Declaration became necessary to erase all doubt as

to Plaintiff's ability to demonstrate the elements of its claims – even under the improperly high

class certification standard urged in opposition – does not give rise to any violation of Rule 16(f).

Nor has Plaintiff violated Rule 26(a)(1).[4]  Fed. R. Civ. P. 26(a)(1) governs certain general

disclosures, whereas Fed. R. Civ. P. 26(a)(2) governs the purported inaction at issue here – the

disclosure of expert witnesses.  Thus, Plaintiff could not have violated Fed. R. Civ. P. 26(a)(1)

because it does not even apply.[5]  Moreover, Plaintiff has complied with Fed. R. Civ. P. 26(a)(2),

which requires the disclosure of expert witnesses in accordance with "the sequence that the court

orders." Fed. R. Civ. P. 26(a)(2)(C).  Here, as stated, the Scheduling Order requires only the

disclosure of trial experts and does not require any disclosures before August 2, 2010.[6]  *See*

Scheduling Order ¶ 7.

---

[4]      Although the introduction to the Motion to Strike confusingly states that the motion is based on violations
of Fed. R. Civ. P. 26(a)(2), Defendants make no such arguments in their brief, instead arguing that Plaintiff has
violated Fed. R. Civ. P. 26(a)(1).

[5]      *See National Cable & Telecomms. Ass'n, Inc. v. Gulf Power Co.*, 534 U.S. 327, 335 (2002) ("[S]pecific
statutory language should control more general language when there is a conflict between the two."); *see also Corley
v. United States*, 129 S. Ct. 1558, 1561 (2009) ("[A] more specific statute [is] given precedence over a more general
one.") (quotation omitted).

[6]      Even if this Court determine that disclosure of Ms. Preston's role in this litigation was necessary under Rule
26(a)(1) or (2) – which it should not – Plaintiff's failure to do so is both justified and harmless.  Plaintiff held the

Plaintiff has also complied with Fed. R. Civ. P. 37(c)(1).  Rule 37(c)(1) provides for

sanctions for the failure to comply with Fed. R. Civ. P. 26(a) or Fed. R. Civ. P. 26(e).  As stated

above, no violation of Rule 26(a) occurred.  Similarly, Plaintiff has not violated Rule 26(e),

which requires (among other things) timely supplementation of interrogatory responses.  *See* Fed.

R. Civ. P. 26(e).  Defendants' argue that Plaintiff violated this rule by failing to disclose Ms.

Preston in a supplemental response to an interrogatory they served seeking the disclosure of

testimonial expert witnesses, thereby causing them to suffer prejudice as a result of their inability

to cross-examine her during the class certification discovery period.  That argument, however,

lacks merit.  The decision to engage Ms. Preston was made ***after*** Defendants filed the Opposition

Brief.  *See* Wood Decl., ¶2.  Moreover, Ms. Preston's retention did not trigger any disclosure

requirement.  She was retained solely to rebut dubious opposition arguments and to clarify

relevant facts and not to provide the necessary showing on class certification, which Plaintiff

submits was done through Plaintiff's Opening Brief.  *See Parkinson v. Hyundai Motor Am.*, 258

F.R.D. 580, 599-600 (C.D. Cal. 2008) (denying motion to strike for failure to make Rule 26.1

disclosure and stating that "[g]iven that the Court is presently deciding the certification issue - a

relatively early stage in the proceedings - the Court denies [the motion to strike]. . . .  [The

objecting party] may reassert their objections prior to or during trial and are not prejudiced by the

Court's consideration of [the objectionable] evidence in deciding class certification").  In any

event, to eliminate any perceived prejudice, Plaintiff proposed a joint stipulation continuing the

class certification hearing while Defendants took the opportunity to depose Ms. Preston and

submit additional briefing.  Belying their claims of prejudice, Defendants rejected Plaintiff's

---

honest belief that it was premature to prove the "fraud-on-the-market" and loss causation elements at the class certification stage of the litigation and was justified in that belief in reliance on this Court's decision in *Boston Scientific*.  In addition, the Preston Declaration provides no facts that would be a surprise to Defendants, so they cannot credibly claim to have been prejudiced by it.  *See  Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 197-98 (1st Cir. 2006) (finding surprise and prejudice to be "important integers" in calculation of harmlessness of new evidence).

offer absent the unreasonable condition that Plaintiff pay Defendants' briefing costs, which

Plaintiff rightfully declined to do.  Accordingly, no violation of Rule 37(c)(1) occurred here and

any violation that did occur was harmless.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff, the Oklahoma Firefighters, respectfully submits

that Defendants' Motion to Strike the Declaration of Candace L. Preston should be denied.


Respectfully submitted,

Dated: May 4, 2010

**BERMAN DEVALERIO**


By:     /s/ Bryan A. Wood
Glen DeValerio (BBO# 122010)
Bryan A. Wood (BBO# 648414)
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
E-Mail: bwood@bermandevalerio.com

**Lead Counsel for Lead Plaintiff**
**Oklahoma Firefighters Pension**
**and Retirement System**


## CERTIFICATE OF SERVICE

I, Bryan A. Wood, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as nonregistered participants by first class mail on May 4, 2010.


Dated:  May 4, 2010                                        /s/ Bryan A. Wood
                                                                     Bryan A. Wood