UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE SMITH & WESSON HOLDING CORP. SEC. LITIG. | Civil Action No. 07-CV-30238-MAP |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendants Michael F. Golden ("Golden"), John A. Kelly ("Kelly"), and Smith &

Wesson Holding Corporation ("SWHC" or the "Company") (collectively "Defendants") submit

the following Memorandum of Law in Opposition to Lead Plaintiff, Oklahoma Firefighters

Pension and Retirement System's ("Plaintiff" and/or the "Oklahoma Fund") Motion to Compel

Production of Responsive Documents and Service of Adequate Interrogatory Responses (the

"Motion").

## PRELIMINARY STATEMENT

Plaintiff's Motion appears to be a pretext to create an additional forum in which to

reiterate its eleventh-hour request to this Court that the discovery deadline (currently May 7,

2010) should be extended.  A motion to compel is not the forum in which to address that issue.

Notwithstanding Plaintiff's rhetoric, Plaintiff's contention that Defendants have engaged in

"gamesmanship" and have purposefully withheld non-privileged documents that are responsive

to Plaintiff's Discovery Requests[1] is simply not true.  To the contrary, throughout the non-expert

---

[1] Plaintiff's "Discovery Requests" include: (1) Plaintiff's First Request for Documents and Information (propounded on September 30, 2009); (2) Plaintiff's First Set of Interrogatories (propounded on March 22, 2010); (3) Plaintiff's Second Request for Documents and Information (propounded on March 22, 2010); and (4) Plaintiff's Third Request for Documents and Information (April 14, 2010 ).

discovery period, Defendants have at all times acted in good faith and have taken all reasonable

steps as required under the Federal and Local Rules to locate and produce documents and

information responsive to each of Plaintiff's Discovery Requests.  Most recently, Defendants

responded to Plaintiff's Third Request for Documents and Information, which was not served

until April 14, 2010, and to which Defendants' response was not due until May 14, 2010 -- 7

days <u>after</u> the close of non-expert discovery.  These Discovery Requests are nothing but a pretext

to support Plaintiff's last minute attempt to extend the discovery deadline.

Throughout the non-expert discovery period, Defendants have addressed each purported

"deficiency" asserted by Plaintiff in conjunction with Plaintiff's Discovery Requests.  Although

Defendants are not (and should not be), required to duplicate their discovery efforts to provide

Plaintiff with information already produced simply because Plaintiff prefers such information in

a different format, Defendants remain willing to produce information to Plaintiff in the format in

which Plaintiff is now requesting it.  Any such "preference" on Plaintiff's part, however, does

not render Defendants' prior production deficient or inadequate.  Nor should any such preference

on Plaintiff's part for information in a different format be a basis for extending non-expert

discovery.  Because Defendant has produced documents and information responsive to Plaintiff's

Discovery Requests and remains willing to produce information it has already produced in a

different format, Plaintiff's Motion to Compel should be denied in its entirety.

## ARGUMENT

While the Federal Rules of Civil Procedure are to be construed liberally in favor of

discovery, there are limitations – particularly when the discovery sought is unreasonably

duplicative or cumulative.  *See* Fed. R. Civ. P. 26(b)(2)(C) (2010) (noting the court has

discretion to limit discovery in circumstances when "the discovery sought is unreasonably

cumulative or duplicative…"); *see also* <u>In re Priceline.com Sec. Litig.</u>, 233 F.R.D. 83, 85 (D. Conn. 2005) (noting "[a] court can limit discovery if it determines, among other things, that the discovery is: (1) unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.").

Similarly, it is well-settled under Fed. R. Civ. P. 33(d), that a party may provide business records in response to an interrogatory when (1) the answer to an interrogatory may be determined by examining the documents provided; (2) the burden of ascertaining the answer is the same for either party; and (3) the documents to be reviewed are identified with specificity. *See* Fed. R. Civ. P. 33(d) (2010); *see also* <u>Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.</u>, 2008 U.S. Dist. LEXIS 104329, *9 (N.D. Cal. 2008) (noting Rule 33(d) makes it "entirely appropriate" to shift the burden to the requesting party when the burden of deriving or ascertaining the answer will be substantially the same for either party.).[2] That is precisely the case here where Defendants not only provided the business records in question, but also provided a detailed index broken down by each type of business report.

---

[2] Fed. R. Civ. P. 33(d), entitled "Option to Produce Business Records," provides: If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries. *See* Fed. R. Civ. P. 33(d) (2010).

## I.   DEFENDANTS' HAVE ADEQUATELY RESPONDED TO ALL OF PLAINTIFF'S DISCOVERY REQUESTS

Pursuant to Local Rule 37.1, Defendants address the purported deficiencies in their responses to each of Plaintiff's Discovery Requests as follows:

### A.   Defendants Have Fully Complied With Plaintiff's First Request For Documents

Plaintiff's argument that Defendants have "failed to complete" their document production with respect to Plaintiff's First Request for Documents is without merit.  Significantly, Plaintiff fails to identify with specificity the documents that are purportedly "missing" from Defendants' production.  The Court should not be required to "guess" as to what documents are purportedly missing.  The reality is, Defendants fully and adequately responded to Plaintiff's First Request for Documents and addressed each of the purported "deficiencies" raised by Plaintiff on March 3, 2010, more than two month ago.   Defendants have explained to Plaintiff that the vast majority of the documents Plaintiff apparently deems "missing" from Defendants' production simply do not exist.  *See* Declaration of John A. Sten in Support of Defendants' Opposition to Plaintiff's Motion to Compel ("Sten Decl.").  The few missing documents that actually did exist have been produced.  Id.

### B.   Defendants' Have Adequately Responded to Plaintiff's First Set Of Interrogatories

As noted above, Fed. R. Civ. P. 33(d) makes it "entirely appropriate" to shift the burden of extracting information from documents to the requesting party when the burden of deriving or ascertaining the answer will be substantially the same for either party.  *See* Fed. R. Civ. P. 33(d); *see also* Baxter Healthcare, 2008 U.S. Dist. LEXIS at *9.  In this case, Defendant produced a myriad of documents containing the information requested by Plaintiff.  Despite this production,

Plaintiff would "prefer" to have such information in narrative format. This mere "preference," however, does not render Defendant's production deficient.

### INTERROGATORY NO. 1

Identify any and all periodic (*e.g.*, daily, weekly, monthly quarterly, yearly) sales goals, plans, quotas, targets and/or incentives applicable during the Relevant Period to S&W sales persons, including, without limitation, the individuals listed on Exhibit A. For each individual sales person, identity all applicable trade channels, sales regions, product types, and/or products for which the individual sales person had sales responsibilities.

### RESPONSE NO. 1

SWHC objects to Interrogatory No. 1 to the extent that it is overbroad, unduly burdensome, and duplicative, as it seeks information that is contained in documents already produced to Plaintiff. Attached as Exhibit A is a listing, by bates designation, of documents Defendants have produced to Plaintiff that contain the information sought by this Interrogatory. In addition to the documents listed in Exhibit A, Defendants have produced several Organizational Charts to Plaintiff that also contain information sought by this Interrogatory. See documents bates-stamped SWHC 56233 through SWHC 56259.

### REPLY:

Plaintiff argues in its Motion to Compel that Defendants have not provided the "specific information for individual sales persons" during the Relevant Period. *See* Pl. Memo., p. 7. This is not true. In addition to the financial information referenced by specific Bates number designation in Exhibit A to Defendants' Response to Plaintiff's First Set of Interrogatories (including, but not limited to, Call Reports, Daily Numbers, Monthly Sales Reports, Orderometer Reports, Sales Reports, and Weekly Sales), Defendants have also produced approximately eighty-five (85) Ranking Reports that list, in detail, the individual SWHC sales person, the geographic location(s) covered by that individual, the internal sales goal/target for that particular individual, as well as actual amount of revenue generated for the particular quarter in question. This production covers the following documents:

```
SWHC 067764  SWHC 139864  SWHC 158349  SWHC 171685  SWHC 190193
SWHC 067765  SWHC 139865  SWHC 158350  SWHC 172348  SWHC 190194
SWHC 076944  SWHC 141729  SWHC 158355  SWHC 172349  SWHC 190404
```

| SWHC 082625 | SWHC 141730 | SWHC 158356 | SWHC 174095 | SWHC 190405 |
| SWHC 082626 | SWHC 142588 | SWHC 158363 | SWHC 189269 | SWHC 190407 |
| SWHC 083492 | SWHC 142589 | SWHC 158364 | SWHC 189270 | SWHC 190408 |
| SWHC 083500 | SWHC 142793 | SWHC 158366 | SWHC 189417 | SWHC 190799 |
| SWHC 085717 | SWHC 142794 | SWHC 158367 | SWHC 189418 | SWHC 190800 |
| SWHC 085719 | SWHC 144061 | SWHC 158558 | SWHC 189520 | SWHC 190809 |
| SWHC 085771 | SWHC 144062 | SWHC 158559 | SWHC 189521 | SWHC 190810 |
| SWHC 085863 | SWHC 150755 | SWHC 158560 | SWHC 189522 | SWHC 197004 |
| SWHC 085985 | SWHC 150779 | SWHC 158596 | SWHC 189833 | SWHC 199071 |
| SWHC 090090 | SWHC 158262 | SWHC 158692 | SWHC 189834 | SWHC 199425 |
| SWHC 090094 | SWHC 158343 | SWHC 158698 | SWHC 189843 | SWHC 200432 |
| SWHC 090099 | SWHC 158344 | SWHC 158702 | SWHC 189844 | SWHC 200656 |
| SWHC 090348 | SWHC 158346 | SWHC 170661 | SWHC 189869 | SWHC 200952 |
| SWHC 122639 | SWHC 158347 | SWHC 171021 | SWHC 189870 | SWHC 201049 |

Moreover, despite Plaintiff's assertions to the contrary, Defendants have also provided monthly sales quotas information for SWHC salesperson during the relevant period. *See e.g.* SWHC 089720 (Tab 3 - FY 2006); SWHC 117334 (Tab 4 - FY 2007). *See* Sten Decl., ¶ 3. Simply put, the information requested by Plaintiff in Interrogatory No. 1 has been produced. To eliminate any contention by Plaintiff that it has not received all relevant information, Defendants are willing to produce a complete integrated set of the Ranking Reports and Sales Quotas generated during the relevant period. Any such production will, however, be duplicative of information already provided to Plaintiff.

**INTERROGATORY NO. 2**

Identify the actual sales performance (*e.g.*, daily, weekly, monthly quarterly, yearly) during the Relevant Period for each individual referenced in Interrogatory No. 1. For each such individual, provide actual unit sales, sales revenue, and a percentage comparison of such sales to all periodic sales goals, plans, quotas, targets, and/or incentives identified in your response to Interrogatory No. 1.

**RESPONSE NO. 2**

SWHC objects to Interrogatory No. 2 to the extent that it is overbroad and unduly burdensome. SWHC further objects to Interrogatory No. 2 to the extent that it is duplicative and/or seeks information that is contained in documents already produced to Plaintiff. Attached hereto as Exhibit B is a listing, by bates designation, of documents Defendants have produced to Plaintiff that contain the information sought by this Interrogatory.

**REPLY:**

In addition to the documents specifically identified in Defendants' Response to Plaintiff's

First Set of Interrogatories, Defendants again refer Plaintiff to the numerous Ranking Reports

referenced above, each of which contains the actual performance (or "results") for each

individual SWHC salesperson in relation to the internal target.

### INTERROGATORY NO. 3

Identify all individuals who, during the Relevant Period, attended the daily sales and
inventory meetings described in the Complaint. For each individual attendee, identify the dates
of his or her attendance or, to the extent that such information is unknown, the general time
period during which he or she is believed to have attended such meetings.

### RESPONSE NO. 3

SWHC objects to Interrogatory No. 3 to the extent that it is overbroad, vague, and unduly
burdensome, as it is not reasonably calculated to lead to the discovery of admissible evidence.
SWHC further objects to Interrogatory No. 3 because SWHC did not conduct daily meetings
referred to as "sales and inventory meetings," as described in the Complaint. To the extent that
Plaintiff is referring to the Orderometer meetings that were conducted by SWHC on a daily
basis, as described during the 30(b)(6) Deposition of John A. Kelly (See Kelly Deposition
Transcript at pp. 175:20-176:3), SWHC objects on the basis that it seeks information that is
contained in documents already produced to Plaintiff and on the basis that it seeks information
not regularly kept by SWHC. Notwithstanding these objections, SWHC has indicated that there
was not a pre-determined list of SWHC employees that were invited to attend the Orderometer
meetings on a daily basis, nor was there a sign-in and/or attendance sheet to memorialize who
attended those meetings. Generally, the employees that received Orderometer reports by email
from either John Kelly, Joseph Fillion, Martin Devasier, Joseph Reilly or Christine Gibb
attended the meetings as their schedules permitted. The individuals on the Orderometer
distribution list are as follows:

| | | | | |
|---|---|---|---|---|
| Adam Young | Ernest Langdon | Jens Heider | Leland Nichols | Sue Cupero |
| Amaro Goncalves | Frank Convertino | Joe Fillion | Marty Devasier | Terry Wade |
| Ann Makkiya | Ginger Chandler | Joe Reilly | Matt Nyman | Tom Fimmen |
| Bob Scott | Gregg Ritz | John Dineen | Michael Golden | Tom Coghill |
| Bryan James | Herb Belin | John Kelly | Neil Gibree | Tom Taylor |
| Cheryl Maron | Ian O'Donnell | John Lewinski | Paul Pluff | Tony Miele |
| Dan Fontaine | James Unger | Joseph Bergeron | Richard Reis | William Brown |
| Deborah Roe | Jan Mladek | Kathy Salvador | Sandy Ross | Shaun Phelan |
| Devin Standard | Jeff East | Kevin Wright | Shane Wheaton | Windy Clayton |
| Doreen Fidalgo | Jeff Croze | Larry Flatley | William Lachenmeyer | |

**REPLY:**

Despite Plaintiff's assertions to the contrary, Defendants have adequately responded to this Request. In its response, SWHC indicated that there was not a pre-determined list of SWHC employees that were invited to attend the Orderometer meetings on a daily basis, nor was there a sign-in and/or attendance sheet to memorialize who attended those meetings. Generally, the employees that received Orderometer reports by email from John Kelly, Joseph Fillion, Martin Devasier, Joseph Reilly or Christine Gibb attended the meetings as their schedules permitted. That list of SWHC employees (referenced above) was provided to Plaintiff. As for confirmation of each individual's attendance at each such meeting, Plaintiff is asking Defendants to produce information that does not exist. That is something Defendants cannot be compelled to do.

### C.   Defendants' Have Adequately Responded to Plaintiff's Third Request For Documents

**REQUEST NO. 1**

Any and all documents concerning S&W's Program Change Requests ("PCRs") and PCR Control Logs, e.g., SWHC131186 and SWHC121140, including all documents and communications relating to the approval and/or implementation of PCR's.

**RESPONSE NO. 1**

SWHC reiterates its Objections to Definitions and Instructions. SWHC further objects to Request No. 1 on the basis that it is duplicative and seeks documents already produced to Plaintiff. These documents are listed, by bates designation, in the attached Exhibit A.

**REPLY:**

As noted above, and as Plaintiff acknowledges, Defendants have provided Plaintiff with approximately eighty-eight (88) Program Change Request ("PCR") forms. Indeed, Exhibit A of Defendants' Reponses and Objections to Plaintiff's Third Set of Documents Requests [Wood Decl., Ex. 5 - Docket No. 127-2] provides the specific Bates-designation for each of the PCRs provided to Plaintiff. Plaintiff's request for the PCRs was served on April 14, 2010, and only in

its Motion to Compel (filed on April 27, 2010 - less than two weeks later) does Plaintiff indicate

its primary focus is "executed" PCRs. Again, in the interests of defusing any contention by

Plaintiff that Defendants have not produced all of the documents they are required to produce,

Defendants agree to provide Plaintiff with a copy of all "executed" PCR's during the Relevant

Period. Any such production, however, will be duplicative of information already produced to

Plaintiff.

### REQUEST NO. 2

Any and all "monthly books" and/or "red books" cited during S&W's March 25, 2010 deposition conducted pursuant to Fed. R. Civ. P. 30(b)(6) ("30(b)(6) Deposition") as referenced on pages 145-195 of the 30(b)(6) Deposition transcript.

### RESPONSE NO. 2

SWHC reiterates its Objections to Definitions and Instructions. SWHC further objects to Request No. 2 on the basis that it is duplicative and seeks documents already produced to Plaintiff. These documents are listed, by bates designation, in the attached Exhibit A.

### REPLY:

As noted above, and as set forth in Exhibit A of Defendants' Reponses and Objections to

Plaintiff's Third Set of Documents Requests [Wood Decl., Ex. 5 - Docket No. 127-2],

Defendants have provided Plaintiff with copies of the SWHC "Red Books" for the Relevant

Period. Notwithstanding Defendants' prior production relating to the January 2007 Red Book

[SWHC 054788 through 054924], Defendants agree to provide Plaintiff with a complete copy of

the Red Book for January 2007. As for Plaintiff's request for Red Books for the calendar year

2008 through the present, that request is for information that is not relevant and is not likely to

lead to the discovery of admissible evidence because it is beyond the scope and time period

associated with this litigation.

**REQUEST NO. 3**

Any and all other "books" referenced during 30(b)(6) Deposition prepared for senior managers for any purpose, including without limitation meetings with S&W's Board of Directors and/or investor conference calls.

**RESPONSE NO. 3**

SWHC reiterates its Objections to Definitions and Instructions.  SWHC further objects to Request No. 3 on the basis that it is duplicative of Request No. 2 and seeks documents already produced to Plaintiff.  Finally, SWHC objects to Request No. 3 because it is vague, as John A. Kelly made clear during the 30(b)(6) Deposition that he was unsure exactly what book, other than the red books, Plaintiff's counsel was referencing.  See Kelly 30(b)(6) Deposition, pp. 164:11-166:10.

**REPLY:**

Defendants reiterate their above-referenced objection.  Despite Plaintiff's assertions to the contrary, Defendant John Kelly's reference to "books" in his Rule 30(b)(6) deposition was in regard to the Red Books, which have been produced to Plaintiff.  Plaintiff has distorted Mr. Kelly's testimony to imply that "other books" existed and these purported "books" have been withheld from Plaintiff [Wood Decl., Ex. 20] – that is simply not the case.  In support of this argument [aside from its mischaracterization of Mr. Kelly's testimony], Plaintiff relies upon an email correspondence from Mike Golden to Leland Nichols where he states that he "just went through his blue book" for a meeting.  See Wood Decl., Ex. 21.  What Plaintiff fails to understand, however, is that copies of the Company's Board of Directors presentations, Board Minutes, budgets, etc. were literally kept in blue-colored binders and that all of this information has already been provided to Plaintiff.  Moreover, the "business review book" referenced in the email string contained in Ex. 21 is, in reality, a presentation to the SWHC Board of Directors that is comprised almost entirely of the same financial information (maintained in the blue-colored binders).  This presentation, as well as the underlying information contained therein, has already

10

been provided to Plaintiff. *See e.g.* SWHC 039253 through SWHC 039287 (Board of Directors Book - Board Meeting, June 27, 2007). *See* Sten Decl., ¶ 4.

**REQUEST NO. 4**

Any and all documents concerning S&W's periodic "Business Review" meetings, *e.g.*, SWHC 140556-SWHC140563.

**RESPONSE NO. 4**

SWHC reiterates its Objections to Definitions and Instructions. SWHC further objects to Request No. 4 on the basis that it is duplicative and seeks documents already produced to Plaintiff. These documents are listed, by bates designation, in the attached Exhibit A.

**REPLY:**

Defendants reiterate their above-referenced objection. Plaintiff's contention that Defendants have "failed to produce any materials" for the "business review" meetings is simply not true. *See* Pl. Memo, p. 15. As noted above, and as set forth in Exhibit A of Defendants' Reponses and Objections to Plaintiff's Third Set of Documents Requests, Defendants have provided Plaintiff with copies of numerous documents concerning SWHC "Business Meetings." *See* Wood Decl., Ex. 5 - Docket No. 127-2]. Moreover, what Plaintiff fails to understand, is that the "monthly business review" meetings are actually the monthly staff meetings to review and discuss, *inter alia*, the Red Books, the Executive Reviews (comprised of notes taken by John Dineen – Vice President of Finance), the Funnel Reports, and other financial information – all of which have been provided to Plaintiff.

## **CONCLUSION**

Defendants have taken all reasonable steps to locate and produce documents responsive to Plaintiff's Discovery Requests and have produced all discoverable, non-privileged information responsive to Plaintiff's First Request for Documents.  The only documents that Defendants have declined to produce are those are those that are beyond the relevant scope of this litigation.  For the foregoing reasons, Defendants respectfully request that this Court enter an order denying Plaintiff's Motion to Compel in its entirety.

Dated:  May 6, 2010

Smith & Wesson Holding Corp.,

By its attorneys,

/s/  John A. Sten
John A. Sten (BBO #629577)
Jason C. Moreau (BBO #648678)
GREENBERG TRAURIG, LLP
One International Place
Boston, Massachusetts 02110
Telephone:  (617) 310-6025
Facsimile:  (617) 279-8425
stenj@gtlaw.com
moreauj@gtlaw.com

Francis D. Dibble, Jr. (BBO #123220)
BULKLEY, RICHARDSON &
GELINAS, LLP
1500 Main Street, Suite 2700
Springfield, Massachusetts 01115-5507
Telephone:  (413) 272-6246
Facsimile:  (413) 272-6804
fdibble@bulkley.com

E. Jeffrey Walsh (*Pro Hac Vice*)
Brian J. Schulman (*Pro Hac Vice*)
GREENBERG TRAURIG, LLP
2375 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone:  (602) 445-8000
Facsimile:  (602) 445-8100
walshj@gtlaw.com
schulmanb@gtlaw.com

### CERTIFICATE OF SERVICE

I, John A. Sten, certify that on May 6, 2010, the following document was filed electronically with the Court.  Notice will be sent by e-mail to all parties through the Court's electronic filing system and the filing may be accessed through the Court's system.

/s/  John A. Sten
John A. Sten